J-S03020-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                             :            PENNSYLVANIA
                             :
                v.                  :
                             :
                             :
RODNEY CARL BATES           :
                             :
           Appellant        :     No. 888 MDA 2025

Appeal from the Judgment of Sentence Entered February 11, 2025
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000953-2024

BEFORE:  DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY BECK, J.:                **FILED: APRIL 22, 2026**

Rodney Carl Bates ("Bates") appeals from the judgment of sentence entered by the Lycoming County Court of Common Pleas ("trial court") after a jury convicted him of simple assault, false imprisonment, and terroristic threats, and the trial court found him guilty of harassment, a summary offense.[1]  On appeal, Bates argues that the trial court erred in denying his motion in limine relating to certain testimony by the victim, allowing the Commonwealth to amend the criminal information the morning of trial, finding that the verdict was not against the weight of the evidence, and imposing an excessive sentence.  Because we find that each issue Bates raises on appeal is without merit, we affirm.

---

[1]  18 Pa.C.S. §§ 2701(a)(1), (3), 2903(a), 2706(a)(1), 2709(a)(1).

**Facts**

Bates was in a romantic relationship with Elizabeth Gerber ("Gerber") from May 2020 until April 2024. On or around April 16, 2024, Bates had just completed rehab and was having a discussion with Gerber in her bedroom about their future. During this conversation, they discussed that Bates was seeing other women and that he wanted to end his relationship with Gerber; consequently, she became upset with Bates and began yelling at him. Bates then grabbed Gerber by the arms, pushed her onto her bed, and pinned her to the bed for approximately ten to fifteen minutes. Gerber repeatedly asked Bates to let her off the bed, but he refused to do so. During this time, Bates said to Gerber, "Just stop it. Just stop fighting me because I just might have to try and choke you again like I did before." N.T., 12/6/2024, at 37. According to Gerber, eleven months prior, Bates had strangled her in her bathroom during an argument to the point that she almost passed out and caused bruising on her throat and neck. Because of this prior incident, Gerber was afraid Bates was going to seriously injure her.

Eventually, Bates left the bedroom to answer the telephone, and Gerber went into the bathroom. Their argument, however, continued and Bates went into the bathroom and shoved Gerber causing her to fall onto the side of the bathtub and then the floor. The fall left her in a severe amount of pain and unable to get up off the floor for approximately ten minutes. After Gerber was

able to get up, she asked Bates to leave and he did roughly twenty minutes later.

Gerber's pain persisted for several days to the point where she began repeatedly falling in the shower. After a fall from which she was unable to get off the floor, Gerber called 911. At the hospital, medical personnel contacted the police who interviewed Gerber at the hospital. During this interview, police observed severe bruising all over Gerber's arms and legs.

**Procedural History**

The trial court set forth the procedural history as follows:

> [Bates] was initially charged with one count each of simple assault [under 18 Pa.C.S. § 2701(a)(3)], misdemeanor of the second degree, and false imprisonment, a misdemeanor of the second degree. On December 6, 2024, prior to the start of trial, the court decided [the] Commonwealth's motion to amend the information, and [Bates'] motion in limine. Over [Bates'] objection, the Commonwealth's motion for leave of court to amend the information was granted. Thus, the Commonwealth amended the information to add one count of simple assault – attempts to cause or intentionally, knowingly, or recklessly causing bodily injury to another [under 18 Pa.C.S. § 2701(a)(1)], a misdemeanor of the second degree, one count of terroristic threats, a misdemeanor of the first degree, and one count of harassment, a summary offense.
>
> [Bates'] motion-in-limine requested exclusion of any mention a current protection from abuse (PFA) order between [Bates] and [Gerber], any mention of prior incidents between [Bates] and [Gerber] under Rule 404(b), and any mention of [Bates'] prior criminal history. Additionally, [Bates] argued that the introduction of [Bates'] statement that he will choke her "like last time" is prejudicial. [Bates] asserted that introducing the statement will imply a prior history between [Bates] and [Gerber] regarding matters similar in nature to the issue at bar, but that are not relevant here. [Bates] further requested that [Gerber] not be referred to by the Commonwealth as a "victim" during the trial.

- 3 -

Subsequently, the [trial court] denied [Bates'] motion to exclude the statement and to bar the Commonwealth from utilizing the designation of "victim" when referring to [Gerber] at trial.

The jury returned a verdict against [Bates] on all counts … and the [trial court] found [him] guilty of the summary offense of harassment.

[Bates] was scheduled for sentencing on January 9, 2025. [Bates] did not appear for his sentencing, and a bench warrant was issued. … At sentencing on February 11, 2025, [Bates] was sentenced to serve 16 to 32 months [of] incarceration in a state correctional institution. The sentence was to run consecutive to an active [PFA] contempt [Bates] was then serving.

[On February 21, 2025, Bates filed post-sentence motions.] [Bates] aver[ed] that the addition of charges the morning of trial was unduly prejudicial, and that the allowance of the phrase "like last time" was so prejudicial as to undermine the truth determining process. [Bates] included a motion to reconsider [his] sentence, a motion for a new trial, and a motion in arrest of judgment. …

Trial Court Opinion, 6/16/2025, at 1-2 (unnecessary capitalization omitted).

On June 16, 2025, after a hearing, the trial court denied Bates' post-sentence motions. Bates timely appealed to this Court. He presents the following issues for review:

I. Whether the trial court erred by denying [Bates'] motion in limine and allowing the Commonwealth's use of the phrase "like last time" because it was unduly prejudicial and unfairly implied a history of prior incidents between [Bates] and [Gerber].

II. Whether the trial Court erred by allowing the Commonwealth to amend the information the morning of trial, and denying [Bates'] request to continue the trial as a remedy for the amended information.

III. Whether the verdict was not supported by the weight of the evidence presented at trial.

- 4 -

IV.    Whether the trial court abused its discretion by imposing a manifestly excessive and unduly harsh sentence without sufficiently considering the fundamental norms underlying the sentencing process.

Bates' Brief at 5-6 (unnecessary capitalization omitted; reordered for ease of review).

## Denial of Motion in Limine

In his first issue, Bates argues that the trial court erred by denying his motion in limine seeking to exclude Gerber's testimony that he threatened to "choke you again like I did before" while he pinned her to the bed. **See** Bates' Brief at 14-19.   Specifically, he contends that this testimony violated Pennsylvania Rule of Evidence 404(b) prohibiting evidence of other crimes, wrongs, or acts and that it did not satisfy an exception to the rule. **Id.** at 17-18.   Bates asserts that the Commonwealth offered the evidence solely "to prove he is of bad character, and he acted in conformity with the charges at hand." **Id.** at 17.   He argues that the trial court's decision to permit the testimony to provide "context" for the jury was not an exception to Rule 404(b) or a sufficient basis for admission of the evidence. **Id.** at 18.

We review a trial court's decision to admit certain evidence according to the following standard:

> [T]he admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion.   Our standard of review of a challenge to an evidentiary ruling is therefore limited.   Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not

- 5 -

applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Wilson***, 273 A.3d 13, 19 (Pa. Super. 2022) (citation omitted).

Under Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Thus, under Rule 404(b), evidence of prior bad acts "is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes," but "may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa. Super. 2015) (en banc) (citations omitted). Evidence may be admitted under Rule 404(b)(2) only "if the probative value of the evidence outweighs its potential for unfair prejudice." ***Id.*** (quoting Pa.R.E. 404(b)(2)).

The Commonwealth contends that Gerber's testimony relating to the prior choking incident was necessary to establish Bates had committed simple assault under section 2701(a)(3) of the Pennsylvania Crimes Code. ***See*** Commonwealth's Brief at 7. Under section 2701(a)(3), "a person is guilty of

- 6 -

assault if he … attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S. § 2701(a)(3). This Court has explained that simple assault under section 2701(a)(3) thus has the following elements:

> 1) the defendant attempted to put another person in fear of imminent serious bodily injury and took a substantial step toward causing this fear; 2) the defendant used physical menace to do so; and, 3) it was the defendant's conscious object or purpose to cause fear of [imminent] serious bodily injury.

***Commonwealth v. Joseph***, 350 A.3d 1057, 1060 (Pa. Super. 2026) (quotation marks and citation omitted). "Serious bodily injury" is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Additionally, "we have defined the term 'physical menace' as menacing or frightening activity." ***Joseph***, 350 A.3d at 1060 (citation omitted).

The trial court explained its decision to deny Bates' motion in limine as follows:

> At the hearing on [Bates'] motion to preclude the use of the phrase "like last time[,]" the court denied the motion to the extent necessary for the Commonwealth to explore the topic for the purpose of providing context regarding the victim's fear of [Bates]. At trial, the Commonwealth did not overuse the phrase or probe into the events that gave rise to [Bates'] alleged use of the phrase per the court's order.

Trial Court Opinion, 6/16/2025, at 9 (unnecessary capitalization omitted). Thus, the trial court admitted the evidence not for the truth of the matter

asserted, but to establish Bates' intent.  *See* 18 Pa.C.S. § 2701(a)(3); *see also* Pa.R.E. 404(b)(2).

As stated above, the Commonwealth had to prove that Bates attempted to put Gerber in fear of imminent serious bodily injury and that it was his conscious object or intent to do so.  Gerber testified at trial that during a heated, verbal altercation with Bates, he pushed her onto her bed, grabbed her by the legs and refused to allow her off the bed.  N.T., 12/6/2024, at 34-35.  She explained that as Bates held her on the bed for ten to fifteen minutes, she pleaded with him to release her and struggled to get free of his grasp, but was unable to do so.  *Id.* at 36-37.  During this time, Gerber stated that Bates was telling her that she needed to "be quiet" and "calm down."  *Id.* at 34.  While she was pleading with Bates to let her go, Gerber stated that he said to her "[j]ust stop it.  Just stop fighting me because I just might have to try and choke you against like I did before."  *Id.* at 37.  Gerber explained that during that prior incident, Bates "put his hands around my throat and started squeezing until I was almost unconscious."  *Id.* at 38.  Bates' threat to choke Gerber as he did during a previous altercation, while holding her down on the bed caused Gerber to fear that "he was going to hurt me severely like he did before."  *Id.* at 39.  Thus, Gerber's testimony regarding the prior incident with Bates during which he choked her was necessary and tended to prove that Bates intended to attempt to place her in fear of imminent serious bodily injury and that he intentionally caused such fear.  *See* 18 Pa.C.S. § 2701(a)(3); *see*

*also Joseph*, 350 A.3d at 1060; *see also Commonwealth v. Russell*, 460 A.2d 316, 320 (Pa. Super. 1983) (explaining that choking a victim is a factor that can demonstrate that a defendant intended and attempted to inflict serious bodily injury on the victim).

Based on the foregoing, we find no abuse of discretion in the trial court's determination that the Commonwealth's use of Bates' threat to choke Gerber as he had previously satisfied the intent exception of Rule 404(b)(2). We likewise conclude that Bates failed to establish that the probative value of the evidence was outweighed by the potential of unfair prejudice. Bates is due no relief on this claim.

**Amendment of Criminal Information and Denial of Continuance**

In his second issue, Bates argues that the trial court erred in allowing the Commonwealth on the morning of trial to amend the criminal information to add a charge of simple assault, under 18 Pa.C.S. § 2701(a)(1), and harassment, under 18 Pa.C.S. § 2903(a), and denying his request for a continuance. *See* Bates' Brief at 19-21. He asserts that the "last-minute amendment" caused him prejudice because it increased his maximum possible sentence, "prevented [him] from being able to fully discuss his options with [d]efense [c]ounsel," and "did not allow him the opportunity to decide if he would rather try to pursue a plea deal instead of risking a trial." *Id.* at 20-21.

"We review a trial court's decision to grant or deny a motion to amend an information for an abuse of discretion." ***Commonwealth v. Sandoval***, 266 A.3d 1098, 1101 (Pa. Super. 2021). We likewise review a trial court's decision to grant or deny a requested continuance for an abuse of discretion. ***Commonwealth v. Brooks***, 104 A.3d 466, 469 (Pa. 2014). The denial of a continuance "is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated." ***Commonwealth v. Hansley***, 24 A.3d 410, 418 (Pa. Super. 2011) (citation omitted).

Pennsylvania Rule of Criminal Procedure 564 governs the amendment of a criminal information and provides:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564. "We have stated that the purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa. Super. 2006).

When presented with a question concerning the propriety of an amendment to a criminal information, we must consider "whether the crimes specified in the original indictment or information involve the same basic

- 10 -

elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information." ***Commonwealth v. Moffitt***, 305 A.3d 1095, 1101 (Pa. Super. 2023) (citation omitted). "If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct." ***Id.*** (citation omitted). "If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted." ***Id.*** (citation omitted). The factors we must consider in determining whether an amendment is prejudicial are:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Id.*** (citation omitted).

The trial court explained its decision to permit the Commonwealth to amend the information as follows:

> At the hearing on the motion to amend on December 6, 2024, the Commonwealth argued that the additional charges are based on the affidavit of probable cause, pertain to the alleged victim, and arise out of the same facts as the initial charges contained in the criminal information. The court determined that the charges aligned with the allegations contained in the affidavit of probable

- 11 -

cause, and that there was no tangible issue of prejudice incurred by [Bates] with the addition of the charges. Thus, the court subsequently denied [Bates'] oral motion to continue the trial because the additional charges were born from the initial events giving rise to the initial charges contained in the criminal information.

Trial Court Opinion, 6/16/2025, at 7 (unnecessary capitalization omitted).

The record reflects that the criminal information initially charged Bates with simple assault under 18 Pa.C.S. § 2701(a)(3), which, as discussed in our resolution of his first issue, required proof that he "attempt[ed] by physical menace to put another in fear of imminent serious bodily injury[,] *id.*, and false imprisonment under 2903(a), which required evidence that he "knowingly restrain[ed] another unlawfully so as to interfere substantially with [her] liberty[,]" 18 Pa.C.S. § 2903(a). *See* Criminal Complaint, 4/24/2024, at 2. The Commonwealth sought to amend the criminal information to add charges of simple assault under 18 Pa.C.S. § 2701(a)(1), which required proof that Bates "attempt[ed] to cause or intentionally, knowingly or recklessly causes bodily injury to another[,]" *id.*, terroristic threats under 18 Pa.C.S. § 2706(a)(1), which required evidence that he "commit[ed] any crime of violence with intent to terrorize another[,]" *id.*, and harassment under 18 Pa.C.S. § 2709(a)(1), which required proof that he acted "with intent to harass, annoy or alarm another," and that he "str[uck], shove[d], kick[ed] or otherwise subject[ed] the other person to physical contact, or attempt[ed] or threaten[ed] to do the same[,] *id. See* Motion to Amend Information, 12/4/2024, ¶ 7.

- 12 -

The record further reflects that the facts that gave rise to both the original and additional charges all stemmed from the same incident on or around April 16, 2024, during which Gerber alleged that Bates grabbed her and threw her on bed, held her down on the bed against her will for approximately ten to fifteen minutes, and threatened to strangle her. ***See*** Affidavit of Probable Cause, 4/24/2024. Thus, the amendment did not change the factual scenario underlying the charges, nor did it allege new facts that were previously unknown to Bates. ***See Moffitt***, 305 A.3d at 1101. Additionally, the original and added charges both required Bates to defend against allegations that he made unwanted physical contact with Bates with the intent to, in some manner, "menace," "terrorize," and "alarm" her. ***See*** 18 Pa.C.S. §§ 2701(a)(1), (3), 2903(a), 2706(a)(1), 2709(a)(1). (3). Thus, the amendment to the criminal information did not necessitate a change in defense strategy and Bates had ample notice of the criminal allegations against him. ***See Moffitt***, 305 A.3d at 1101.

Based on the foregoing, Bates has failed to establish the amendment to the criminal information resulted in prejudice. Bates was clearly aware of the facts underlying the charges in the amended information from the time the original charges were first brought against him. While the amendment occurred the morning of trial and increased his maximum possible prison sentence, such factors do not establish prejudice. ***See Sinclair***, 897 A.2d at 1224 ("If there is no showing of prejudice, amendment of an information to

- 13 -

add an additional charge is proper even on the day of trial."); **Commonwealth v. Picchianti**, 600 A.2d 597, 599 (Pa. Super. 1991) ("[T]he mere possibility amendment of an information may result in a more severe penalty due to the addition of charges is not, of itself, prejudice."). We therefore conclude that because Bates had notice of the facts underlying the charges in the amended information and that he failed to establish that he was prejudiced by the amendment, the trial court did not abuse its discretion in permitting the amendment to the criminal information and denying his request for a continuance.

**Weight of the Evidence**

In his third issue, Bates argues that the verdict was against the weight of the evidence. **See** Bates' Brief at 21-23. He asserts that Gerber was an unreliable witness because she could not remember that exact date of the assault and her testimony at trial about where the assault occurred differed from her preliminary hearing testimony. **Id.** at 22-23.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts,

- 14 -

certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

Our standard of review for weight of the evidence claims, however, differs from that of the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

Bates seeks for this Court to reweigh the evidence provided by Gerber and find that she lacked credibility. It is well settled, however, that the factfinder is "the sole arbiter of the credibility of each of the witnesses," including "questions of inconsistent testimony and improper motive." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citation omitted). Indeed, the factfinder "is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.* (citation

- 15 -

omitted); *see also Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa. Super. 2013) (noting that "any conflict in the testimony goes to the credibility of the witnesses and is solely to be resolved by the factfinder") (citation omitted). To that end, the factfinder is free to believe or disregard any part of a witness' testimony. *Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019); *see also Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted).

The trial court, like the jury, heard all the evidence at trial, and was aware of any potential credibility issues relating to Gerber; like the jury, it was permitted to resolve any inconsistencies in her testimony in favor of finding that the verdicts were supported by competent evidence. *See* Trial Court Opinion, 6/16/2025, at 5; *Commonwealth v. Gilliam*, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor). To the extent Bates requests that we reweigh the evidence, we decline to do so. *See Collins*, 70 A.3d at 1251.

In this case, Gerber testified at trial at length about Bates' assault of her in her bedroom and bathroom, the threat he made to choke her during the assault, and the injuries she sustained from the assault. *See* N.T., 12/6/2024, at 30-49. This testimony was consistent with the facts alleged

against Bates in the criminal complaint. *See id.*; *see also* Affidavit of Probable Cause, 4/24/2024. Following our review of the record, we discern no abuse of discretion by the trial court in determining that the jury appropriately weighed the evidence before it and that the verdict did not shock the conscience. *See Juray*, 275 A.3d at 1046-47. Accordingly, Bates' third issue does not entitle him to relief.

**Discretionary Aspects of Sentencing**

In his final issue, Bates argues that the trial court abused its discretion in imposing an excessive and unduly harsh sentence. *See* Bates' Brief at 11-14. He bases his claim on the trial court's imposition of his sentence in this case consecutive to his sentence in another matter for contempt of a PFA order.

This issue challenges the discretionary aspects of Bates' sentence. *See Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) (stating that a claim arguing that a sentence is excessive because the trial court imposed consecutive sentences challenges the discretionary aspects of the sentence).

"The right to appellate review of the discretionary aspects of a sentence is not absolute and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). To invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence, an appellant must satisfy a four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the

- 17 -

> appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted).

Bates satisfied the first two requirements of the four-part test by raising the issue in his post-sentence motion and filing a timely notice of appeal. ***See*** Post-Sentence Motion, 2/21/2025, ¶¶ 16-20; Notice of Appeal, 7/2/2025. Bates, however, did not include a Pa.R.A.P. 2119(f) statement in his appellate brief. Nevertheless, we will not find that he waived his discretionary sentencing claim on this basis because the Commonwealth did not object to his failure to comply with Rule 2119(f). ***See Commonwealth v. White***, 193 A.3d 977, 982 (Pa. Super. 2018) (declining to find waiver where the Commonwealth did not object to the lack of a Rule 2119(f) statement). We must therefore determine if Bates has raised a substantial question for review.

We evaluate what constitutes a substantial question on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Phillips***, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted).

- 18 -

Here, Bates argues that the trial court should have imposed concurrent, rather than consecutive, sentences for his convictions in this case and his separate case finding him in contempt for violating a PFA order. This Court has consistently recognized that excessiveness claims premised on the imposition of consecutive sentences do not raise a substantial question for our review. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (en banc) ("A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[.]"); *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013) ("Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question.").

We have, however, recognized that consecutive sentences can be so manifestly excessive that, in extreme circumstances, such a claim may give rise to a substantial question. *Commonwealth v. Moury*, 992 A.2d 162, 171–72 (Pa. Super. 2010). To make this determination, our focus is on "whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case." *Commonwealth v. Mastromarino*, 2 A.3d 581, 588 (Pa. Super .2010).

Conducting this evaluation, we conclude that Bates has failed to raise a substantial question for our review. The trial court sentenced Bates in this matter to an aggregate term of sixteen to thirty-two months in prison. The record reveals that his sentence for contempt of a PFA order was five months of incarceration. Notably, Bates has failed to identify what, if any, fundamental norms underlying the sentencing process the trial court violated in issuing his sentence. In light of the circumstances of this case and the criminal acts committed by Bates, we decline to find the trial court's decision to impose consecutive sentences manifestly excessive such that it raises a substantial question. Accordingly, Bates' final issue is not subject to our review.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2026